IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PROGRESSIVE NORTHERN INSURANCE CO., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 23-cv-1916-DWD |
| vs. | ) ) ) | |
| BRITTNEY NORTH, and AKEEM MOSLEY, | ) ) ) | |
| Defendants. | | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Following an accident with an uninsured motorist, Defendants Brittney North ("North") and Akeem Mosley ("Mosley") filed uninsured motorist claims with North's insurer, Progressive Northern Insurance Company ("Progressive"). Progressive initiated a coverage investigation, but Defendants refused to comply with Progressive's requests to produce documents, inspect the subject vehicle, and submit to an examination under oath. Frustrated with the lack of compliance, Progressive filed a Complaint for Declaratory Judgment, seeking a declaration that Defendants must comply with Progressive's investigative requests. The Complaint also indicates that Progressive *might* seek a declaration as to Defendants' uninsured motorist claims, but whether Progressive seeks such a declaration depends on what Progressive learns during the course of its coverage investigation.

Defendants have filed a Motion to Dismiss, arguing the amount in controversy is less than $75,000.00, and therefore diversity jurisdiction is lacking. (Doc. 12). For the

reasons set forth herein, the Court agrees. Accordingly, the Motion to Dismiss (Doc. 12) is **GRANTED**.

## I.     BACKGROUND

On September 28, 2021, at approximately 2:25 a.m., Defendants, who are Illinois citizens, were involved in a car accident when they were struck by a passing vehicle, causing North to lose control of her vehicle and veer off the roadway. Defendants asserted uninsured motorist claims under North's insurance policy with Progressive, who is a citizen of Wisconsin and Ohio. The policy provides uninsured motorist coverage limits of $100,000. North demanded the policy limits for her claim. Mosley asserted emergency room charges exceeding $43,000, has undergone additional treatment, and has indicated he will incur additional and ongoing future damages arising out of the accident.

Progressive initiated a coverage investigation. As part of that investigation, Progressive demanded that North and Mosley submit to examinations under oath and produce documents. Progressive also requested an inspection of North's vehicle. North submitted to an examination under oath but declined to give permission for the vehicle inspection. Mosley appeared for his examination but refused to complete it, and he did not produce the requested documents.

The policy precludes coverage for losses caused by an intentional act, and when an insured or person seeking coverage concealed or misrepresented facts or circumstances concerning the loss. The policy also requires cooperation during the course of a coverage investigation.

Progressive requests that the Court declare:

(a) That Akeem Mosley must submit to an examination under oath and produce the documents requested by [Progressive].
(b) That defendant Britnney North provide permission for an inspection of her vehicle under terms that the court deems just; and
(c) That *if, after completing its coverage investigation, Plaintiff determines that no coverage exists*, issue a declaration concerning coverage for the uninsured motor vehicle claims asserted by defendants.

(Doc. 1, p. 3) (emphasis added).

## II.    APPLICABLE AUTHORITY

Progressive bases federal jurisdiction on diversity jurisdiction pursuant to 28 U.S.C. § 1332. District courts have original jurisdiction over actions between citizens of different states in which the amount in controversy exceeds §75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). In the instant case, everyone agrees that the parties are citizens of different states. The parties disagree as to whether the jurisdictional amount is satisfied.

In a declaratory judgment action, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347 (1977). The Seventh Circuit has adopted the "either viewpoint" rule for valuing the object of the litigation, under which "the object may be valued from either perspective-what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiffs' demand." *Macken v. Jensen,* 333 F.3d 797, 799-800 (7th Cir. 2003) (*citing In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 609-10 (7th Cir. 1997); *Uhl v. Thoroughbred Technology & Telecommunications, Inc.,* 309 F.3d 978, 983-84 (7th Cir. 2002)). But either way, the value must be reasonably determinable. *Macken*

3

*ex rel. Macken v. Jensen*, 333 F.3d 797, 799–800 (7th Cir. 2003) ("When the monetary value of a controversy cannot be estimated, litigation must commence in state court."); *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268–70 (11th Cir. 2000) (explaining that injunctive relief sought in diversity suit must not be too speculative or immeasurable to determine amount in controversy because liberal pleading standard is not "license for conjecture").

### III.   DISCUSSION

Progressive contends that the object of the litigation is its request for a declaration of no-coverage. Therefore, Progressive argues, the amount in controversy should be measured by North's demand for the policy limits ($100,000) and Mosley's claim for continuing damages with initial medical specials exceeding $43,000. The Court would agree with Progressive if it was presently and unconditionally seeking a no-coverage declaration. But that is not the scenario before the Court.

Progressive is not presently seeking a declaration that Defendants' failure to comply with Progressive's investigative requests amounts to a breach of contract, relieving Progressive of the duty to cover Defendants' uninsured motorist claims. Nor is Progressive presently seeking a declaration of no-coverage based on some other provision of the policy (e.g., fraud). Instead, Progressive states that it *might* seek a no-coverage declaration after its investigation is completed.

In its Complaint, Progressive indicates that, for various reasons, it suspects that Defendants might not be entitled to uninsured motorist benefits. But Progressive readily admits that a coverage decision has not yet been made; the coverage investigation is

4

ongoing, and Progressive's potential request for a declaration of no-coverage is contingent on the results of that investigation. Indeed, in responding to the motion to dismiss, Progressive states that it will seek a declaration of coverage only if its investigation reveals a basis for denying coverage. On the other hand, if the investigation reveals that Defendants are entitled to uninsured motorist benefits, Progressive will submit the claim to arbitration as is required under the policy. In other words, Progressive, who admits that its "request for policy compliance is preliminary to a determination of coverage," currently lacks the necessary information to support a request for a no-coverage declaration. Instead, Progressive hinges the alleged amount in controversy on the *possibility* that information obtained during its investigation will lead to evidence supporting a finding that there is no coverage under the policy.

Defendants contend that Progressive's potential request for a declaration of no-coverage should not be considered when evaluating the amount in controversy. According to Defendants, the only non-speculative benefit or detriment that will flow to either party is the negligible cost of complying with Progressive's investigative requests. Thus, Defendants argue, the object of the litigation is Progressive's request for compliance with its investigative demands, which do not come close to satisfying the diversity statute's minimum jurisdictional amount.

Neither party has provided the Court with authority directly addressing the exact jurisdictional issues presented by this case. Progressive cites to *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347 (1977) for the uncontroversial proposition that, in a suit for declaratory or injunctive relief, "the amount in controversy is measured

by the value of the object of the litigation." But this does not assist the Court in determining whether a request for a declaratory judgment that a party states it *might* seek can serve as the basis for establishing the jurisdictional amount. Indeed, none of the authority reviewed by the undersigned involved a contingent request for a declaratory judgment. In cases reviewed by the Court, the insurer made a determination as to coverage prior to filing suit, and the complaint sought a declaration of no-coverage at the time of filing. *See e.g., Meridian Security Insurance co., v. Roberts,* 526 F. Supp. 3d 352 (S.D. Ill. 2021); *Ohio Cas. Ins. Co. v. Herring-Jenkins,* 830 F. Supp. 2d 566 (N.D. Ind. 2011); *State Farm Mut. Auto. Ins. Co. v. Conway,* 779 F. Supp. 963 (N.D. Ind. 1991). The Court was unable to locate any federal actions involving an insurer attempting to establish subject matter jurisdiction based on a declaration it *might* seek after the conclusion of its investigation.

Progressive also claims that Defendants are attempting to force Progressive to make a coverage decision before it has an opportunity to depose Mosley, noting that the purpose of insurance provisions requiring the insured to submit to an examination under oath is "to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to its rights, to enable it to decide upon its obligations, and to protect it against false claims." (Doc. 16, p. 3) (citing *Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81 (1884)). The Court does not disagree with Progressive as to the purpose of such provisions, but this, once again, does not address the question of federal subject matter jurisdiction.

Defendants direct the Court's attention to three cases involving analogous (but not identical) claims for declaratory or injunctive relief: *Macken ex rel. Macken v. Jensen*, 333 F.3d 797 (7th Cir. 2003); *DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 273 (2d Cir. 2006); and *James River Ins. Co. v. William Kramer & Assocs.*, LLC 2018 WL 851092 (D.S.C. Feb. 14, 2018).

In *Macken*, the plaintiffs, two minor beneficiaries of a trust and their mother, sued the trustee seeking an accounting of the trust receipts and disbursements for the two minor children. *Macken,* 333 F.3d at 798-99. The plaintiffs maintained that the amount in controversy was met because they believed the trust itself was valued at $300,000. *Id.* at 799. The Appellate Court explained that the plaintiffs were not alleging the trust had failed to honor any financial obligation to the minor beneficiaries. *Id.* Instead, the plaintiffs wanted access to documents to allow them to determine whether the "principal is being prudently managed and the income applied according to the trust's terms." *Id.* In other words, at the time of filing, the value of the trust was not "in controversy."

Applying the "either perspective" rule, the Court then considered the value of the object of the litigation. *Id.* at 799-800. The Court concluded that the cost to the trustee did not meet the jurisdictional amount because the cost of turning over the unredacted documents and conducting an audit was negligible. *Id.* at 800. As to the value, from the minor beneficiaries' perspective, the Court considered the value of obtaining the complete trust documents. (""Whether [plaintiffs are] entitled to see the complete trust documents is the very matter in issue, so the question 'what is the value of this secret?' cannot be elided."). *Id.* Plaintiffs' counsel admitted that he did not know what the

7

documents would reveal or the value of that information to his clients. *Id.* The Appellate Court noted that, unless the documents revealed a "whopper" of a mistake on the part of the trustee, it was unlikely that $75,000 per child would "now be in controversy." Plaintiffs countered, arguing that dismissal on jurisdictional grounds is only proper if the court is certain that the plaintiff cannot recover the jurisdictional amount. In rejecting this argument, the Appellate Court explained, in part, as follows:

> [This rule] does not eliminate the need to place a realistic value on injunctive relief. Moreover, [this rule] supposes that the plaintiff has first made a good faith effort to estimate the stakes. No one is entitled to file in federal court and throw on the defendant (and the judicial system) the entire burden of estimation plus the risk of uncertainty in that process…What Carolyn's lawyer contends – that a plaintiff may file a federal suit with no basis for an assertion that the stakes exceed $75,000, and then use the discovery process to have the merits resolved ahead of any jurisdictional inquiry (recall that this dispute is *about* access to potentially discoverable information) – does nothing other than confess a violation of Rule 11.

*Id.* (emphasis in original). Ultimately, the Appellate Court concluded that, because the value of the "secret" plaintiffs' sought to expose was not yet known, federal subject matter jurisdiction was lacking. *Id.* ("Not until it becomes evident that the information in these trust instruments is worth more than $75,000 should anyone knock on the federal court's door."); *See also id.* ("When the monetary value of a controversy cannot be estimated, litigation must commence in state court. If evidence developed in state litigation shows that the value exceeds the jurisdictional minimum, then the defendant may remove the suit…").

8

In *DiTolla*, a dentist filed a state-court class action complaint against the administrator of a New York reimbursement pool funded by Medicare and Medicaid. *Ditolla*, 469 F.3d at 272-73. The administrator was the subject of ongoing federal grand jury investigations in several states for allegedly deducting improper or sham consulting fees from the reimbursement funds it managed, and the administrator had allegedly settled another class action lawsuit relating to improper deductions for $5.25 million. *Id.* at 273. The plaintiff sought an accounting of all amounts by which the New York pool had been funded and reduced throughout a specified period to determine the possibility of bilking by the administrator. *Id.*

The administrator removed the action to federal court, arguing that because the plaintiff demanded an accounting of all amounts by which the pool had been funded and reduced, he had placed the amount of that fund (an estimated $40 million) in controversy. *Id.* at 272-73. The district court held that, "because [the plaintiff] sought only information, and the value of that information could not be estimated," the administrator had failed the requisite amount in controversy under CAFA. Accordingly, the district court remanded the case, and the administrator appealed. *Id.* at 273-74.

Assuming the fund itself exceeded the jurisdictional requirement, the Second Circuit found that the accounting claim did not place that amount in controversy. *Id.* at 276-77. The court reasoned that the complaint sought "only an accounting, the results of which are presently unknown," and that "no one [could] say how much money may ultimately be claimed by" the plaintiff. *Id.* In so holding, the Court emphasized the "contingent nature" of the plaintiff's request. *Id.* at 276 (noting that the case was brought

9

to determine *whether* the administrator had "fraudulently bilked" the fund as it *may* have done in other states). The Court also noted that the plaintiff did not make a claim to any specific part of the $40 million pool. Rather, he asserted "only a beneficial interest in the Pool," and at most, "suggest[ed] a claim to some yet undefined portion, the amount of which is contingent on the outcome of the accounting." *Id.* at 277. Because any potential damages would be speculative, the Court reasoned, the administrator failed to establish subject matter jurisdiction.

In *James River Ins. Co. v. William Kramer & Assocs., LLC* 2018 WL 851092 (D.S.C. Feb. 14, 2018), the plaintiff insurance company filed suit in state court alleging that it and three other companies insured a property located in Myrtle Beach, South Carolina. Two companies provided primary insurance of $10 million, while the plaintiff and another company provided excess insurance of approximately $34 million. *Id.* at *1. After the property was damaged during a hurricane, the $10 million primary coverage was exhausted, and the plaintiff and the other excess insurer agreed to pay approximately $13.5 million in excess coverage. *Id.* As a result, the plaintiff paid over $6.7 million in excess coverage. *Id.* In the state court complaint, the plaintiff claimed it was entitled to "unfettered" access to the defendant's adjustment file, and that defendant was denying access to the file, "presumably to conceal how the primary policy limits of $10,000,000 were squandered." *Id.* The defendant removed the action to federal court, alleging diversity as the basis for federal jurisdiction.

Relying, in part, on the Seventh Circuit's reasoning in *Macken* and the Second Circuit's reasoning in *DiTolla*, the district court remanded the case, finding that the

amount in controversy requirement was not met. The Court explained that if the injunctive relief was granted, "Plaintiff would simply recover the adjustment file, and Defendant would simply bear the cost of producing it." *Id*. at *2. The Court further explained that, whether a review of the file would reveal any alleged "squandering" was merely speculative and could not be used as a basis for valuing the object of the litigation. *Id.* ("Defendant attempts to prove the amount in controversy is satisfied by relying on Plaintiff's allegations that the $10 million primary coverage was 'squandered,' and that Plaintiff had to pay over $6.7 million in excess coverage…However, these allegations simply explain the reason why Plaintiff wants Defendant's adjustment file – to determine whether such 'squandering' even happened." Also significant, was the fact that, the plaintiff was *not* alleging that the defendant breached the contract by misadjusting the file. Rather, the plaintiff was seeking the file to determine if a breach had occurred.

The parties in the above cases were not seeking a declaratory judgment about insurance coverage. Nonetheless, given the contingent nature of Progressive's request for a no-coverage declaration, the Court finds that they are instructive. As alleged in the Complaint, Progressive is not presently seeking a no-coverage declaration. Rather, Progressive is seeking compliance with its investigative demands so it can determine whether Defendants are entitled to uninsured motorist benefits under the policy. As such, Progressive's Complaint does not place coverage under the policy in controversy. Rather, whether Defendants must comply with Progressive's investigative demands is the only issue in controversy. Progressive has failed to establish that the benefit or detriment that

will flow to either party by complying with its investigative demands meets the required jurisdictional amount.

Finally, the Court notes that the contingent nature of Progressive's request for a no-coverage declaration presents an additional jurisdictional issue not directly addressed by the parties' briefing. "The Declaratory Judgment Act, 28 U.S.C. § 2201, allows federal courts, in their discretion, to render declaratory judgments only where there exists an actual controversy: the latter requirement is a jurisdictional prerequisite of constitutional dimensions." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (citation omitted). In determining whether an actual controversy exists, "the question in each case is whether the facts alleged, under all circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Deveraux v. City of Chicago,* 14 F.3d 328, 331 (7th Cir. 1994). Here, although Defendants have made a demand seeking uninsured motorist benefits, Progressive has not made a coverage decision. At this time, Progressive is merely speculating that, depending on what it learns during its investigation, there *might* be a basis for denying Defendants' uninsured motorist claims. Progressive's speculation about a potential denial does not satisfy the requirement for an actual

controversy. And without an actual controversy, this Court lacks subject matter jurisdiction to entertain the declaratory action against Defendants.

## IV.   CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**. This matter is **DISMISSED** for lack of subject matter jurisdiction. The Court **DIRECTS** the Clerk of Court to close this case and to enter judgment accordingly.

**SO ORDERED.**

Dated: October 24, 2023

_____
DAVID W. DUGAN
United States District Judge